UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

|  |  |  |
|---|---|---|
| THE LANDS COUNCIL; KOOTENAI ENVIRONMENTAL ALLIANCE; THE ECOLOGY CENTER, | ) ) ) ) | |
| | ) | Case No. CV 03-344-N-EJL |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| | ) | **ORDER** |
| RANDY SWICK, District Ranger, Coeur d'Alene River Ranger District; and U.S. FOREST SERVICE, an agency of the United States, | ) ) ) ) ) | |
| Defendants, | ) ) | |
| and | ) ) | |
| NORTHWEST ACCESS ALLIANCE; and THE BLUE RIBBON COALITION, | ) ) ) | |
| Defendant-Intervenors, | ) ) | |

## <u>INTRODUCTION</u>

This matter is before the Court on the motion by Plaintiffs, The Lands Council ("TLC"),

Kootenai Environmental Alliance ("KEA"), and The Ecology Center (TEC) (collectively known

as "Plaintiffs"), for Attorneys' Fees and Costs under the Equal Justice Act ("EAJA"), 28 U.S.C.

2412, *et seq.*, as amended (Docket No. 44).  Plaintiffs seek recovery of their actual attorneys'
fees and expert witness expenses from the government in the amount of $57,865.13.  Plaintiffs
also request the Court exceed the presumptive hourly attorney fee rate provided by the EAJA.
Rather than acquiescing to Plaintiffs' request, Defendants oppose Plaintiffs' motion on the
following grounds: (1) Defendants' position was substantially justified with respect to remedy
phase of this case; (2) Plaintiffs are not entitled to an enhanced hourly rate exceeding the
statutory maximum; and (3) Plaintiffs are seeking reimbursements for time not expended
prosecuting its claim against Defendants.

Having fully reviewed the record herein, the Court finds that the facts and legal
arguments are adequately presented in the briefs and record.  Accordingly, in the interest of
avoiding further delay, and because the Court finds that the decisional process would not be
significantly aided by oral argument, this matter shall be decided on the record before this Court
without oral argument.  The Court finds the Plaintiff's motion should be granted based on the
following analysis.

## I.
## Background

Plaintiffs filed this action for declaratory and injunctive relieve against Defendants
Randy Swick[1] and the United States Forest Service (the Forest Service)(collectively known as
"Defendants").  The Complaint alleges that Defendants violated the National Environmental
Policy Act ("NEPA"), 42 U.S.C. §§ 4321-4370d, the Clean Water Act, 33 U.S.C. § 1323, and the

---

[1]     When this lawsuit was filed, Joseph P. Stringer held the position of District Ranger, and was the named Defendant.  However, he has since left the District and Randy Swick replaced him as District Ranger.  On March 9, 2005, the Court entered an Order granting the parties' Stipulation to substitute Randy Swick as the named Defendant.

Order - page 2

National Forest Management Act ("NFMA"), 16 U.S.C. §§ 1600-1687.[2]  In their Complaint,

Plaintiffs challenged Defendants' decision not to prepare an environmental impact statement for

various activities relating to the Access Management Plan for the Coeur d'Alene River Ranger

District ("the District"), adopted on January 8, 2001 as Forest Supervisor Order No. D3-00-005

("2001 Travel Plan"), and Amendments to the Travel Plan undertaken pursuant to a Decision

Memo dated June 2, 2003 ("2003 Amendments").  Specifically, Plaintiffs sought to enjoin the re-

opening of roads and re-classifications under the 2001 Travel Plan and 2003 Amendments.  After

two failed settlement conferences, Defendants conceded that the Forest Service did not comply

with NEPA in adopting the 2001 Travel Plan, and the 2003 Amendments.  In the wake of this

concession, Defendants filed a request to vacate and remand the 2001 and 2003 Travel Plans to

the Forest Service for further NEPA analysis.  Upon additional consideration, however,

Defendants withdrew the original Request for Remand, and filed a new Motion for Remand on

May 7, 2004.  In this second motion, Defendants requested a remand of the 2001 Travel Plan and

the 2003 Amendments to the Forest Service for further action consistent with the requirements of

NEPA and all other applicable laws and regulations.  In addition, Defendants requested that the

2001 Travel Plan remain in effect during remand.  Subsequently, Defendants orally moved to

amend the motion to allow the 2003 Amendments to also remain in effect during remand.

        Plaintiffs objected to Defendants' proposal, claiming that during the two to three years

that this matter would be on remand, irreparable damage to water quality and wildlife would

continue to occur if motorized travel were to be allowed in environmentally sensitive areas

without first conducting the necessary environmental analysis to assess the potential impacts

---

[2]        On June 30, 2004, the parties consented to the jurisdiction of this Court pursuant to 28 U.S.C.
§ 636(c), and Fed.R.Civ.P. 73.

**Order - page 3**

upon water quality and wildlife.  Rather than allow the 2001 Travel Plan with the 2003

Amendments to stay in effect, Plaintiffs requested that the Court order that the Defendants close

a number of roads that would constitute the most immediate danger of ongoing irreparable harm

to water quality while the matter was under remand.

The Court conducted a five-day evidentiary hearing to determine what travel plan should

be temporarily put in place while the Forest Service worked to devise a new access management

plan in compliance with NEPA.  At the evidentiary hearing on December 7-9, 2004, and January

18-19, 2005, the Court heard testimony from various witnesses, addressing the likely impacts on

water quality and wildlife in the District if certain roads were closed to vehicle traffic.  After

considering all the evidence, the Court granted Defendants' request to remand the 2001 Travel

Plan and the 2003 Amendments to the Forest Service for further action consistent with the

requirements of NEPA and all other applicable laws and regulations.  In addition, the Court

denied Plaintiffs' request that hundreds of miles or road be closed and/or decommissioned, and

ordered that the 2001 Travel Plan with the 2003 Amendments remain in effect during remand

with only the closure of Road 625.

### III.
### Discussion

#### A. Equal Access to Justice Act

Congress enacted the EAJA to improve citizen access to courts and administrative

proceedings. "When there is an opportunity to recover costs, a party does not have to choose

between acquiescing to an unreasonable Government order or prevailing to his financial

detriment.... By allowing a decision to contest Government action to be based on the merits of the

case rather than the cost of litigating, [the EAJA] helps assure that administrative decisions reflect

informed deliberation." *Commissioner, I.N.S. v. Jean*, 496 U.S. 154, 165 (1990), *quoting* S.Rep. No. 96-253, p. 7 (1979)(internal quotation marks omitted).  Under the EAJA, prevailing plaintiffs are entitled to recover their attorneys' fees and costs unless the government's position was substantially justified, special circumstances would make an award unjust, or the application for fees is not timely filed. 28 U.S.C. §§ 2412(d)(1)(A), (1)(B); *Jean*, 496 U.S. at 158-60; *Oregon Natural Resources Council v. Madigan*, 980 F.2d 1330, 1331 (9th Cir.1992); *Thomas v. Peterson*, 841 F.2d 332, 335 (9th Cir.1988) ("EAJA creates a presumption that fees will be awarded unless the government's position was substantially justified").

A "party" eligible to seek attorneys fees and costs is defined in terms of maximum net worth standards, "except that an organization [exempted from taxes under 26 U.S.C. § 501(c)(3) as a charitable organization] ... may be a party regardless of the net worth of such organization...." 28 U.S.C. § 2412(d)(2)(B).

A "prevailing party" is "one who has been awarded some relief by the court." *Buckhannon Bd. and Care Home, Inc. v. West Virginia Dept. of Health and Human Resources*, 532 U.S. 598, 603 (2001); *Farrar v. Hobby*, 506 U.S. 103, 111 (1992) (a party "prevails" in an action when the relief granted represents a "material alteration of the legal relationship between the parties").

The burden is on the government to avoid an EAJA award of attorneys' fees and costs to a prevailing party by showing its position was "substantially justified." *See Scarborough v. Principi*, 541 U.S. 401, 414 (2004).  The test for substantial justification requires the action have a reasonable basis in both fact and law. 28 U.S.C. § 2412(d)(1)(B); *see Pierce v. Underwood*, 472 U.S. 552, 565 (1988) (holding that "substantially" does not mean in this context "justified to a

high degree," but rather "justified in substance or in the main," i.e., "justified to a degree that

could satisfy a reasonable person"); *Scarborough*, 541 U.S. at 414.

Once a court finds that a party is entitled to attorneys' fees, it must then determine a

reasonable fee.  The Court will first address the threshold question whether Plaintiffs are entitled

to fees under the EAJA before moving to the issue as to what constitutes a reasonable fee.

### B.  Entitlement to Fees

Defendants concede that Plaintiffs "prevailed" within the meaning of the EAJA, and are

otherwise eligible for an award of fees and costs.  Defendants also concede that Plaintiffs are

entitled to recover litigation expenses for those costs incurred during the "liability phase" –  i.e.

those expenses incurred before Defendants agreed to remand the matter to the Forest Service for

further consideration after the March 24, 2004 mediation – but they advance the position that the

Court may reasonably "segregate the remedy phase of the litigation from the liability phase"

when making its determination as to whether Defendants' position was substantially justified,

thereby dividing the consideration of the EAJA fee awards into two stages.  *See* Memorandum in

Opposition to Plaintiffs' Application for Attorneys' Fees and Costs, p. 5.  Based on this argument

that the Court may segregate the liability phase from the remedy phase in making the substantial

justification determination, Defendants contend that they should not be required to pay for

attorneys' fees and expenses incurred during the "remedy phase," unless the Court finds that their

position during this phase was not substantially justified.  Thus, the initial inquiry for the Court is

whether it must award or deny fees and expenses under EAJA based upon a determination that the

"position of the United States" in the aggregate meets the standards of the EAJA, or whether the

award can be made for some discrete phases of litigation by focusing on a particular phase to

determine if Defendants' position was not substantially justified, but concurrently deny any award for any phases or positions where the converse is true.

1.    **The "substantial justification" requirement establishes a single threshold which governs the entire action**.

Bifurcation of the liability and remedy phases of the litigation for purposes of determining whether Defendants' position was "substantially justified" would contravene Supreme Court and Ninth Circuit precedent.  In *Commissioner, I.N.S. v. Jean*, 496 U.S. 154, the Supreme Court rejected the petitioners' contention that they could assert a "substantial justification" defense at multiple stages of an action.  *Jean* involved the question whether a prevailing party would be ineligible for fees for the services rendered during a fee application proceeding unless the Government's position in the fee litigation itself was not "substantially justified."  After analyzing the statutory language and the legislative history of the EAJA, the Court concluded that the "substantial justification" requirement of the EAJA establishes a clear threshold for determining a prevailing party's eligibility for fees, one that properly focuses on the governmental misconduct giving rise to the litigation.  496 U.S. at 165-66; *see also* 28 U.S.C. § 2414(d)(2)(D).  Once a court makes a threshold determination regarding substantial justification, that determination governs the entire action.  *Id.*  In reaching this conclusion, the Court noted, "[a]ny given action can have numerous phases...[w]hile the parties' postures on individual matters may be more or less justified, the EAJA ...favors treating a case as an inclusive whole, rather than as atomized line-items."  *Id.*  The Court further observed that Congressional statements indicated that Congress did not intend to allow a federal agency to avoid liability for a fee award by reasonable behavior during litigation when unjustifiable agency action had forced the litigation.  *See Jean*, 496 U.S. at 159, n. 7.

**Order - page 7**

In addition, the weight of authority supports the conclusion that substantial justification is not determined by the degree of the plaintiff's success in separate phases of the litigation. *See, e.g., Texas State Teachers Assn. v. Garland independent Sch. Dist.*, 489 U.S. 782, 790 (1989) (the degree of the plaintiff's success" does not affect "*eligibility* for a fee award.") (emphasis added); *Air Transport Ass'n of Canada v. FAA*, 156 F.3d 1329, 1333 (9th Cir.1998) (Congress did not intend a result where if the government was substantially unjustified on only one ground, but was justified on several other possible grounds, that a prevailing party would be denied attorney fees.). Accordingly, the Court will only make a single threshold determination as to whether Defendants' position was substantially justified, "one that properly focuses on the governmental misconduct giving rise to the litigation." *Jean*, 496 U.S. at 165.

> **2.      Defendants' position was not "substantially justified."**

The underlying conduct at issue here is the decision by the District to implement the 2001 Travel Plan, and 2003 Amendments, without conducting the proper analysis of the potential environmental impacts under NEPA.  The District ignored several basic requirements of NEPA, despite the clear command that agencies must strictly adhere to the mandates of that Act.  *See Flint Ridge Dev. Co. v. Scenic Rivers Ass'n*, 426 U.S. 776, 787-88 (1976).  NEPA mandates that agencies take into account environmental factors when making significant decisions.  42 U.S.C. § 4332(2)(c).  If the federal agency determines that an environmental impact statement (EIS) is unnecessary, then it must prepare a finding of no significant impact (FONSI).  40 C.F.R. § 1501.14(e)(1).  In this case, Defendants failed to prepare an EIS or a FONSI.  In addition, Defendants failed to prepare a cumulative effects analysis, which would have allowed the District

to analyze the impacts of the proposed project in light of that project's interaction with the effects of past, current, and reasonably foreseeable projects.

This was not a case involving matters of first impression or difficult questions of statutory interpretation. *Cf. Edwards v. McMahon*, 834 F.2d 796, 802-03 (9th Cir. 1987). This was not a case involving "a novel but credible extension or interpretation of the law," *Thomas v. Peterson*, 841 F.2d 332, 335 (9th Cir. 1988), or "a convoluted regulation which was difficult to interpret," *Southern Or. Citizens Against Toxic Sprays, Inc. v. Clark*, 720 F.2d 1475, 1481 (9th Cir. 1983), *cert. denied*, 469 U.S. 1028 (1984).  Rather, this was a case where Defendants simply ignored straightforward and important statutory obligations and forced Plaintiffs to bring the matter to court to have the errors corrected. *Cf. Thomas*, 841 F.2d at 336.

Based on Defendants' failure to comply with the relevant statutes and regulations, the Court finds Defendants' position was not substantially justified.  As noted above, this determination that Defendants' prelitigation position was not substantially justified acts as a "one-time threshold for fee eligibility." *Jean*, 496 U.S. at 160.  Thus, plaintiffs are presumptively entitled to a fee award which "encompasses all aspects of the civil action," absent some unreasonably dilatory conduct by the prevailing party on any portion of the action, which is not a factor here. *Id. see also, id.* at 166.  Because such dilatory conduct is not a factor here, Plaintiffs are presumptively entitled to recover for all phases of the litigation.

## C.  Determination of a Reasonable Fee Award

The calculation of a "reasonable hourly rate" is different under the EAJA than under other fee-shifting statutes such as 42 U.S.C. § 1988.  Under § 1988, the burden is on the claimant to produce evidence that the rate sought comports with prevailing market rates in the relevant

community.  *Sorenson v. Mink*, 239 F.3d 1140, 1145 (9th Cir. 2001).  But under the EAJA, attorney fee amounts are statutory. *Id.*  Congress has capped the rate for a fee award at $125 per hour for all cases filed after March 29, 1996 "unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A).

Plaintiffs seek hourly rates, which exceed the statutory maximum of $125.00 imposed under the EAJA, for its two attorneys: Karen Lindholdt ($175.00) and Terrance V. Sawyer ($135.00) on the ground that "special factors" apply to them, including special expertise and unavailability of other counsel.  Because the Supreme Court elucidated the meaning of "special factor" in *Pierce v. Underwood*, 487 U.S. 552, 571-74 (1988), the Court's analysis must begin with that case.  The Justices explained that the higher fee could not be based simply on the limited availability of qualified attorneys.  Rather, the Court held that an enhancement of the hourly rate could be justified under the exception if the availability of qualified attorneys is limited and if the nature of the case makes it necessary to retain the services of attorneys qualified in "some specialized sense, rather than just in their general legal competence." *Id.* at 572.  The Court explained:

> We think it refers to attorneys having some distinctive knowledge or specialized skill needful for the litigation in question--as opposed to an extraordinary level of the general lawyerly knowledge and ability useful in all litigation. *Id.*

The Court suggested that the distinctive knowledge and skill are exemplified by an "identifiable practice specialty such as patent law, or knowledge of foreign law or language." *Id.*  It then concluded that reimbursement above the statutory ceiling is allowed when "such qualifications are necessary and can be obtained only at rates in excess of the $75 cap [now $125]." *Id.*

**Order - page 10**

In the wake of *Underwood*, the Ninth Circuit developed a three-part test to serve as a guide as to when an award of attorneys' fees in excess of the statutory maximum is warranted. Plaintiffs must demonstrate: (1) that the attorneys seeking fees above the statutory maximum possess "distinctive knowledge and skills developed through a practice speciality"; (2) that those distinctive skills are "needed in the litigation"; and (3) that those skills are not "available elsewhere at the statutory rate." *Love v. Reilly*, 924 F.2d 1492, 1496 (9th Cir. 1991).

1.     **A fee enhancement exceeding the statutory maximum is justified with respect to Ms. Lindholdt.**

Here, Plaintiffs are entitled to a fee enhancement because Ms. Lindholdt has  "some distinctive knowledge or specialized skill needful for the litigation in question...." *Underwood*, 487 U.S. at 572.  The Lands Council engages entirely in public interest environmental litigation, a discrete, specialized field of practice.  *See, e.g., Animal Lovers Volunteer Ass'n, Inc. v. Carlucci*, 867 F.2d 1224 (9th Cir. 1989)(internal citation and quotation marks omitted)(noting that environmental litigation "may indeed require distinctive knowledge or specialized skill" and constitute "an identifiable practice specialty" so as to justify a fee enhancement); *see also National Wildlife Federation v. FERC*, 870 F2d 542 (9th Cir. 1989)(concluding that the attorney, an environmental specialist who has devoted himself to the complex regulatory issues involved in hydropower regulation and public land forestry, engaged in a speciality requiring knowledge not readily available to one possessing "general lawyerly knowledge and ability"); *Love v. Reilly*, 924 F.2d at 1495)(finding an enhanced fee to be justified by counsel's prior litigation experience," and by his experience with "the areas of expert witness testimony necessary to assemble a common insectide case in the short period dictated by the need for a preliminary injuction"); *Washington Dept. of Wildlife v Stubblefield*, 739 F Supp 1428 (W.D. Wash 1989)(holding that

**Order - page 11**

public-interest environmental litigation was a discrete, specialized field of practice that could be

the basis for an EAJA special-factor adjustment above the statutory maximum).  In particular, the

Court is satisfied that Ms. Lindholdt has demonstrated the requisite distinctive knowledge of and

specialized skills in public interest environmental litigation.  Because of her skills, the Lands

Council was successful in persuading the District to remand its 2001 Travel Plan with the 2003

Amendments for further assessment of the project's environmental impacts.  In addition,

Plaintiffs have raised public awareness regarding the very significant dangers high road densities

throughout the District pose to water quality in the area.  Therefore, the Court finds that a hourly

rate of $175.00 is reasonable.[3]

### 2.     Mr. Sawyer is entitled to compensation at the requested rate.

Defendants also argue that the hours expended by Mr. Sawyer should not be included in

the calculation of the fee award because he did not represent plaintiffs before the Court in this

litigation.  The Court disagrees that this should serve as a basis for excluding hours expended by

Mr. Sawyer.  As the Court pointed out in *Bullfrog Films, Inc. v. Catto*, 815 F.Supp. 338, 343 n. 8,

(C.D.Cal. 1993), no such requirement exists under the EAJA.  The *Bullfrog* court further

observed that paralegals, who never appear before a court in litigation, are routinely compensated

under the EAJA.  Accordingly, the Court will include those hours expended by Mr. Sawyer in its

calculation of a reasonable fee at the rate of $135.00 per hour.

### 3.     The "results obtained" warrant a modification of the fee award.

However, the Court will reduce the award to reflect the "results obtained."  The EAJA

affords "district courts discretion to adjust the amount of fees for various portions of the litigation

---

[3] The Court would also note that $175 an hour is just slightly above what the statutory rate would be of $157.53 if inflation was added to the statutory $125.00 per hour.

guided by reason and statutory criteria." *Jean*, 496 U.S. 165-166.  While the degree of a plaintiff's success does not affect the substantial justification determination, a court may modify a fee award to exclude time spent litigating unsuccessful claims.  *Id.* at 160-161.  In *Hensley*, the Supreme Court held that the extent of a plaintiff's success is a crucial factor in determining the proper amount of award of attorney fees.[4] 461 U.S. at 433; *see also Atkins v. Apfel*, 154 F.3d 986 (holding that the district court abused its discretion by failing to consider results obtained on appeal when determining whether fees were reasonable).  This factor becomes particularly crucial "where a plaintiff is deemed " prevailing" even though he succeeded on only some of his claims for relief." *Id.*

In this case, Plaintiffs triumphed in their efforts to convince Defendants to remand the 2001 Travel Plan and 2003 Amendments to the District for further action consistent with the applicable laws and regulations.  Yet, Plaintiffs failed in their efforts at the evidentiary hearing to convince the Court to order the closure or obliteration of hundreds of miles of roads while the matter was on remand.  In fact, of the hundreds of miles of roads that Plaintiffs originally sought to close or obliterate, the Court concluded that only Road 625 warranted closure.  Specifically, the Court found Plaintiffs had not presented sufficient evidence to establish that allowing the other roads at issue to remain open for two or three more years would present irreparable harm to

---

[4] *Hensley* involved 42 U.S.C. § 1988 (Fees Act), which allows a "prevailing party" to recover fees in civil rights actions.  However, the Court in *Jean* held that *Hensley* applies to the EAJA.  Specifically, the Court stated:

> As we held in Hensley. ., the "prevailing party" requirement is "a generous formulation that brings the plaintiff only across the statutory threshold. It remains for the district court to determine what fee is 'reasonable.' " Similarly, once a private litigant has met the multiple conditions for eligibility for EAJA fees, the district court's task of determining fee is reasonable is essentially the same as described in *Hensley v. Eckerhart,* 461 U.S. 424(1983)]."

*Jean*, 496 U.S. at 160-61.  (citations omitted).

Order - page 13

the environment.  As a result, it refused to order the closure of roads requested by Plaintiffs based solely on their location in the vicinity of an impaired water body.

The Court, however, did want to discuss Road 625 in more detail.  This road was the subject of considerable testimony at the hearing by both sides.  Some of the Government's own witnesses expressed concerns about the road remaining open because of its location adjacent to an impaired waterway; however, the Government seemed even more concerned as to whether they could enforce a road closure due the public's historic use of the road.  The Court ruled in favor of Plaintiffs on Road 625.  Because of the amount of time spent litigating this particular road and its significance in relation to the other roads, the Court will award Plaintiffs $5000 in attorneys' fees for this aspect of the evidentiary hearing only, and $500 in expert witness fees.

Due to Plaintiffs failure to otherwise persuade the Court with respect to the closure of all the other roads, this Court concludes that attorney fees and costs awarded under the EAJA should be limited to a reasonable sum for the legal services up to the point of obtaining the remand to the District.  On March 24, 2004, Defendants agreed to remand this matter to the District for further compliance with the applicable laws.  Apart from Road 625, which has been discussed previously, the additional time and money expended opposing Defendants' Motion to Remand did not significantly enhance the result obtained by Plaintiffs.  In fact, Defendants actually offered to close more roads during the March, 24, 2004 mediation than this Court order closed at the conclusion of the 5-day evidentiary hearing.  The Court will not award the amounts requested because "fees for [ ] litigation should be excluded to the extent that the applicant ultimately fails to prevail in such litigation." *Atkins*, 154 F.3d at 990, *quoting Jean*, 496 U.S. at 163, n. 10.

**4.    Plaintiffs are not entitled to reimbursement for attorney time expended opposing the Motion to Intervene.**

Plaintiffs also seek reimbursement for twelve hours of attorney time expended in opposing Northwest Access Alliance's and Blue Ribbon Coalition's Motion to Intervene. Where plaintiffs are opposing a motion filed by private defendants and the government did not join the motion, an award for fees against the government for that particular motion "would be manifestly unfair and contrary to historic fee-shifting principles. *Love v. Reilly*, 924 F.2d 1492, 1496 (internal citation and quotation marks omitted). As in *Love*, Plaintiffs have failed to show the hours spent opposing Northwest Access Alliance's and Blue Ribbon Coalition's motion to intervene were incurred in opposing government resistance. Accordingly, any award of fees for Plaintiffs' opposition to the motion to intervene would be unjust and will be excluded from the final calculation of the fee award.

### D. Calculation of Fees

Ms. Linholdt claims 257.50 hours for her work on the merits of this lawsuit. Excluding those hours Ms. Lindholt spent preparing for Plaintiffs' unsuccessful attempt to close hundreds of miles or roads and the time expended in preparing an opposition to the Motion to Intervene, the Court will award fees for 114 hours at a rate of $175 per hour, for a total amount of $19,950.00. It is not possible to calculate with precision the hours during the hearing devoted to Road 625; however, $5000 in attorneys' fees and $500 in expert witness fees should closely approximate the fees and costs actually incurred. In addition, the Court will award attorneys' fees for time spent on this fee application at the rate of $175 per hour in the amount of $1,400.00. In sum, the Court will award fees for Ms. Lindholt for a total amount of $26,350.00. The Court will also award fees to Mr. Terrence Sawyer, the attorney who assisted Ms. Lindholt, for 22.5 hours of work

performed at a rate of $135 per hour, or $3037.50.  Thus, the total amount of attorney fees awarded to Plaintiffs is $29,387.50.

In addition, the statute expressly authorizes recovery of "the reasonable expenses of expert witnesses, [and] the reasonable cost of any study, analysis, engineering report, test, or project which is found by the court to be necessary for the preparation of the party's case...." 28 U.S.C. § 2412(d)(2)(A).  Plaintiffs seek $8398.88  for the services of its expert witnesses, Allen Isaacson. The Court finds compensation at the rate of $110.00 per hour is reasonable.  Mr. Isaacson claims 76 hours of work.  However, 65 hours were spent preparing for and attending the 5-day evidentiary hearing.  The Court will not compensate Mr. Isaacson for this work relating to Plaintiffs' unsuccessful remedy claim, except for the $500 awarded related to testimony on Road 625.  Plaintiffs are awarded a total of $1,710.00 for Mr. Isaacson's fees.

## IV.
## Conclusion

Plaintiffs' Application for Attorneys' Fees and Costs under the Equal Justice Act (Docket No. 44), filed on May 4, 2005, is GRANTED under the EAJA. Plaintiffs are awarded a total of $29,387.50 for attorney fees and $1,710.00 for expert witness fees.  The total award of costs and fees is $31,097.50.

**IT IS SO ORDERED**.

DATED: November 23, 2005

_Mikel H. Williams_

Honorable Mikel H. Williams
United States Magistrate Judge

Order - page 16